## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

| | |
|---|---|
| **JUSTIN BELL,** | 16-cv-2467 |
| Plaintiff, | HON. TERRENCE G. BERG |
| v. | |
| **UNITED PARCEL SERVICE, INC.,** | **ORDER DENYING IN PART AND GRANTING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, DENYING DEFENDANT'S MOTION TO STRIKE** |
| Defendant. | |

Plaintiff Justin Bell claims he was discriminated against on the basis of race by his employer, United Parcel Service, Inc., in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, the Tennessee Human Rights Act, Tenn. Code Ann. § 4-21-401 *et seq.*, and 42 U.S.C. § 1981. Specifically, he alleges that he was passed over for several management-level promotions in favor of less-qualified white employees and disciplined more harshly than his white peers. He further asserts that he was retaliated against for lodging complaints with UPS and his union and for filing a formal charge of discrimination with the Equal Employment Opportunity Commission, in violation of Title VII, the Tennessee Human Rights Act, and § 1981. For the reasons set forth in

detail below, Defendant UPS's motion for summary judgment will be granted in part and denied in part, and its motion to strike denied.

## BACKGROUND

Plaintiff Justin Bell began working for United Parcel Service, Inc. ("UPS"), Defendant in this case, in 2010. He began as a Part-Time Loader at the company's Whites Creek Center, in Nashville, Tennessee and was promoted to Part-Time Preload Supervisor a few months later. ECF No. 60-1, PageID.521–22 (Plaintiff's Dep.). Soon thereafter, at the encouragement of his manager, Race Cholewinski, Plaintiff applied for and was given a position as a Package Driver in June 2013, which came with a significant pay raise. ECF No. 60-1, PageID.522, 525; ECF No. 60-3, PageID.605 (Mike Lipscomb Dep.). In this role Plaintiff's immediate supervisor was Mike Lipscomb. ECF No. 60-1, PageID.522.

During much of the relevant timeframe, UPS used the Management Assessment and Promotion Process ("MAPP") to track minimum skills requirements for full-time management positions. ECF No. 53, PageID.304 (Def.'s Statement of Undisputed Facts). To qualify for promotion under MAPP, interested employees had to: (1) submit a letter of interest; (2) pass a supervisor evaluation; (3) pass an online examination administered and scored by an outside testing agency; (4) pass a written exam; and (5) interview with and receive approval from management personnel. *Id.*; ECF No. 59, PageID.464 (Pl.'s Resp. to Statement of Undisputed Facts). Plaintiff had completed these steps and

was accordingly MAPP-qualified. *See* ECF No. 59, PageID.465. But becoming MAPP-qualified was "merely the minimum requirement" to apply for a management-level position. ECF No. 52, PageID.188 (Def.'s Response Br.).

In January 2015, UPS transitioned from the MAPP system to the Management Career Opportunity ("MCO") system to facilitate management-level hiring. ECF No. 59, PageID.465. Employees interested in these positions now had to pass a Management Readiness Evaluation ("MRE") to be considered for promotion after January 1, 2015. ECF No. 59, PageID.465–66. Plaintiff claims that he was disqualified from MAPP in December 2014 and was accordingly not grandfathered into the new MCO system. *See* ECF No. 41, PageID.140 (Second Am. Compl.). Although Plaintiff contends this disqualification was intentional, he acknowledges that he brought the issue to Cholewinski and Lipscomb's attention and that after taking the MRE sometime in January 2015 he became eligible for promotion again by January 17, 2015. ECF No. 60-1, PageID.553; ECF No. 59, PageID.466.

Whenever a UPS employee applied for a full-time management position, an email would be sent to the employee's manager requesting approval for the employee to apply. ECF No. 60-2, PageID.579 (Race Cholewinski Dep.). Cholewinski, Plaintiff's manager, testified that he granted every single such application request submitted by Plaintiff because Plaintiff had a college degree. ECF No. 60-2, PageID.579; ECF

No. 60-3, PageID.603. Otherwise, Cholewinski generally provided no other input about Plaintiff's suitability for positions he applied to. ECF No. 60-2, PageID.579. When Plaintiff applied for a Finance Manager position, the Finance Division Manager asked Cholewinksi what kind of employee Plaintiff was. ECF No. 60-2, PageID.579. Cholewinski testified that he told him Plaintiff was "a good employee." ECF No. 60-2 PageID.579. Cholewinski further testified that he had previously set up a meeting between Gary Reed, the Division Manager to whom Cholewinski reported, "about [Plaintiff's] interest in a position that [Plaintiff] had applied for in the division." ECF No. 60-2 PageID.581, 583.

In total, Plaintiff applied for 34 management-level positions at UPS between January 3, 2015 and September 16, 2017. ECF No. 59, PageID.467–68. He was interviewed for Market Analyst, Customer Profit, and Financial Specialist positions but ultimately did not receive those promotions. ECF No. 60-1, PageID.553–54. Plaintiff acknowledges he was not qualified for some of the jobs he applied for—specifically, the positions with an engineering component. ECF No. 60-1, PageID.554.

The record makes clear that the working relationship between Plaintiff and Cholewinski deteriorated sharply over time. Plaintiff testified during his deposition that Cholewinski, as his manager, had "power and control" to promote him to a management role but repeatedly chose not to do so because of Plaintiff's race. UPS, however, disputes that Cholewinski had authority to promote Plaintiff to any of the

management-level positions he pursued. ECF No. 59, PageID.469; ECF No. 60-1, PageID.562. Instead, hiring decisions were made by Human Resources and by the Hiring Manager responsible for the available position. *See* ECF No. 54-4, PageID.362–63 (Gary Reed Dep.); ECF No. 60-2, PageID.578; ECF No. 54-6, PageID.478–88 (Kathy Ferguson Dep.). Adding to the tension between Plaintiff and Cholewinski was the fact that Plaintiff incorrectly believed that within six months of his becoming a Package Driver, Cholewinski would promote him to the management-level position of Full-Time On-Road Supervisor. ECF No. 60-1, PageID.522. UPS asserts Plaintiff was mistaken that being qualified to apply for promotion under the MAPP system meant his promotion was essentially guaranteed. And Lipscomb, Plaintiff's immediate supervisor, testified that neither Plaintiff nor any other Package Driver would have been ready for promotion to On-Road Supervisor that quickly. ECF No. 60-1, PageID.522–24; ECF No. 60-3, PageID.614.

According to Lipscomb, Plaintiff "started off doing really well in package [driving] . . . . He seemed pretty happy in the beginning." ECF No. 60-3, PageID.604. But things began to deteriorate, when Plaintiff lost his original package route to another driver with "probably 20 years more" experience. ECF No. 60-3, PageID.604. The amount of time it took Plaintiff to complete his delivery route began "increasing as time went on." ECF No. 60-3, PageID.612. And Cholewinski asserts that Plaintiff began "failing to follow the methods, failing to follow proper procedures,

failing to follow proper instructions, previous instructions given" and "would use [allegations of] harassment . . . to try to stop [Cholewinski] from holding him accountable of doing his job." ECF No. 60-2, PageID.584–85. Lipscomb testified that Plaintiff "had had over 20 accidents" as a Package Driver. ECF No. 60-3, PageID.603. He considered this number unusually high. *But see* ECF No. 60-3, PageID.609 (explaining that under UPS policy, "an accident was anything that did damage to property or your vehicle" and that Plaintiff may have overreported such incidents).

In January 2015, Plaintiff approached Winona Marks, Human Resources Manager at his facility, to discuss his concerns that he was being harassed and discriminated against by Cholewinski because of his race. ECF No. 60-5, PageID.635 (Winona Marks Dep.). Plaintiff further expressed to Marks that he was worried filing union grievances about the alleged discrimination would hurt his chances at promotion. *Id.* at PageID.637. In addition, he called the UPS hotline number to complain of discrimination in 2015 and harassment in 2016 and 2017. *See* ECF No. 58 (Plaintiff's Decl.). Despite the concerns he had expressed to Marks, he also later filed a number of grievances with his union on August 14 and 19, 2015 alleging perceived inequities in his treatment as well as harassment by Cholewinski. *See* ECF No. 54-2, PageID.313–21.

Eventually, on August 21, 2015, Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission

("EEOC"). ECF No. 60-13, PageID.758 (EEOC Charge of Discrimination). He alleged that Cholewinski had intentionally disqualified him from UPS's MAPP process "to make it more difficult for [him] to apply for the management positions." ECF No. 60-13, PageID.758. He further asserted that several white men with less seniority and experience than him were hired for full-time management positions while he had been passed over. ECF No. 60-13, PageID.758. It is undisputed that Plaintiff at this juncture has presented no evidence of these employees' qualifications or disciplinary records. ECF No. 59, PageID.472. The EEOC charge also referenced the union grievances Plaintiff had raised against Cholewinski for "favoritism, retaliation, and his nitpicking of [Plaintiff's] work." ECF No. 60-13, PageID.758; *see* ECF No. 60-1, PageID.572; ECF No. 60-13, PageID.760, 762, 764–65.

Plaintiff alleges that after filing the union grievances and formal EEOC complaint he was subjected to retaliatory discipline by Cholewinski and others. Indeed, on several days in mid-to-late August and September 2015, after Plaintiff had lodged internal and union complaints and filed his EEOC charge, Cholewinski did use UPS's progressive-discipline system to file warnings about perceived issues with Plaintiff's performance. ECF No. 60-2, PageID.585. Cholewinski sent Plaintiff six different warning letters on September 18, 2015 about his "continued failure to follow proper procedures and previous instruction," and "failure to follow [Cholewinski's] instructions." ECF No.

54-2, PageID.328–34. Plaintiff contends these letters were issued in retaliation for his filing of grievances and that Cholewinski disciplined him more harshly than his white peers. ECF No. 60-1, PageID.532–33, 549; ECF No. 60-2, PageID.596.

For example, Plaintiff asserts that although white UPS employees would wear "Bluetooth" wireless headsets in the workplace while on the job without any problem, he immediately received a written warning when he wore his Bluetooth device at the UPS facility. ECF No. 60-1, PageID.572. According to Cholewinski, UPS drivers are not supposed to have Bluetooth devices on at all during their shift because they create an "in-cabin distraction." ECF No. 60-2, PageID.591. But Moore, the union representative for UPS employees, testified that UPS employees were permitted to wear Bluetooth headsets—as Plaintiff says he was—just not to use them while driving. ECF No. 60-7, PageID.683 (Rick Moore Dep.). Although Cholewinski asserts Plaintiff was not the only employee he chastised for wearing a Bluetooth device, and that he had also censured the performance of several white employees for other reasons, Moore testified that in his opinion the violations Cholewinski wrote Plaintiff up for were minor and not the kind of serious violations that typically resulted in formal disciplinary write-ups. ECF No. 60-7, PageID.682; *see* ECF No. 60-2, PageID.594. Moore believed the write-ups "all stemmed from whatever rift [Plaintiff and Cholewinski] had," ECF No. 60-7, PageID.682, that there was "some tension between the two" and "[a] lot

of egos." ECF No. 60-7, PageID.682. Testifying based on his contemporaneous notes, Moore explained that he had "asked [Cholewinski] to back off" because he "felt . . . that he was being a little bit too hard on [Plaintiff] or making the situation worse." ECF No. 60-7, PageID.683.

Plaintiff also asserts that Chris Swafford, his supervisor during 2016, "retaliated [against] and intimidated" him because of his race, at the instruction of Cholewinski. ECF No. 60-1, PageID.537–38. Plaintiff testified that every day Swafford followed him around, constantly seeking to verify Plaintiff's whereabouts "because of the color of [his] skin." ECF No. 60-1, PageID.536–37. Swafford also acknowledged discussing guns and media reports about white police officers shooting black men with Plaintiff while at work but asserts Plaintiff was attempting to bring up these controversial topics to goad him into making a statement he could report to UPS management as being racist. *See* ECF No. 60-6, PageID.664–65. Plaintiff submitted letters to UPS explaining that Swafford made him feel "intimidated and threatened for my life" and, on July 13, 2017, he sent an email to UPS Human Resources, using the name "David Clark" in which he stated that he was in fear for his life and that the allegedly hostile work environment had driven him to the

point of entertaining suicidal ideations. ECF No. 60-13, PageID.770.[1] He also filed union grievances about Swafford's allegedly harassing behavior throughout 2017 and into 2018. *See* ECF No. 59-1, PageID.496, 503, 507. According to Plaintiff, Swafford's behavior towards him was carried out at the instruction of Cholewinski. ECF No. 60-1, PageID.540.

Swafford testified during his deposition that he was unaware of any allegations of discrimination Plaintiff had raised with UPS or the EEOC. *See* ECF No. 59, PageID.475. He explained that he felt a need to continuously monitor Plaintiff because he failed to follow instructions and to complete his assigned tasks and acknowledged he had issued Plaintiff disciplinary write-ups for failing to follow clock-in procedures. ECF No. 60-6, PageID.654–56. Swafford was involved in issuing Plaintiff numerous additional warning notices in 2017 about his "continued unreliability and continued unacceptable attendance record" and "failure to follow proper procedures and previous instruction" as well as notices of UPS's intent to discharge Plaintiff from the company. *See, e.g.,* ECF No. 59-1, PageID.490 (Feb. 10, 2017 Warning Notice); ECF No. 59-1, PageID.491 (Feb. 14, 2017 Warning Notice); ECF No. 59-1, PageID.492 (Feb. 16, 2017 Intent to Discharge); ECF No. 59-1, PageID.494 (Mar. 1, 2017 Intent to Discharge); ECF No. 59-1, PageID.495 (Mar. 1, 2017

---

[1] Plaintiff admitted during his deposition that he sent the email from an account he controlled under the name of David Clark, but that he did not intend to obscure his identity and planned for UPS to view the email as his own submission. *See* ECF No. 60-1, PageID.565.

Warning Notice); ECF No. 59-1, PageID.497 (June 20, 2017 Intent to Discharge); ECF No. 59-1, PageID.498 (June 20, 2017 Warning Notice); ECF No. 59-1, PageID.499 (Jul. 10, 2017 Intent to Discharge); ECF No. 59-1, PageID.500 (Jul. 11, 2071 Warning Notice). Plaintiff asserts that at least some of these letters were issued in retaliation for complaints he had filed against UPS. ECF No. 60-1, PageID.571. Shawn Campbell, a coworker of Plaintiff's at the Whites Creek UPS facility, also testified that Swafford would let other employees do things that Plaintiff wasn't permitted to do, for example, leaving work early but still getting paid in full for the shift, and taking longer lunch breaks. ECF No. 60-8, PageID.688. Campbell also corroborated Plaintiff's contentions that Swafford retaliated against UPS employees who filed grievances. *Id.*

## DISCUSSION

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *See* Fed. R. Civ. P. 56(a). A fact is material only if it might affect the outcome of the case under the governing law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). On a motion for summary judgment, the Court must view the evidence and any reasonable inferences drawn from the evidence in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citations omitted); *Redding v. St. Edward*, 241 F.3d 530, 531 (6th Cir. 2001).

The moving party has the initial burden of demonstrating an absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). If the moving party carries this burden, the party opposing the motion "must come forward with specific facts showing that there is a genuine issue for trial." *Matsushita*, 475 U.S. at 587. The trial court is not required to "search the entire record to establish that it is bereft of a genuine issue of material fact." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479–80 (6th Cir. 1989). Rather, the "nonmoving party has an affirmative duty to direct the court's attention to those specific portions of the record upon which it seeks to rely to create a genuine issue of material fact." *In re Morris*, 260 F.3d 654, 655 (6th Cir. 2001). The Court must then determine whether the evidence presents a sufficient factual disagreement to require submission of the challenged claims to the trier of fact or whether the moving party must prevail as a matter of law. *See Anderson*, 477 U.S. at 252.

## I.    Title VII of the Civil Rights Act of 1964

A plaintiff generally must file a discrimination claim with the Equal Employment Opportunity Commission ("EEOC") to bring a Title VII lawsuit. *Amini v. Oberlin Coll.*, 259 F.3d 493, 498 (6th Cir. 2001). The statute of limitations for an EEOC charge begins to run from the date of "the alleged unlawful employment practice[.]" 42 U.S.C. § 20003–5(e)(1). Because Tennessee has enacted its own laws against employment discrimination, a plaintiff in the state has 300 days from the date of the

alleged discrimination to file his EEOC charge. *Alexander v. Local 496, Laborers' Int'l Union of N. Am.*, 177 F.3d 394, 407 (6th Cir. 1999); *Tartt v. City of Clarksville*, 149 F. App'x 456, 460 (6th Cir. 2005). The plaintiff must then obtain a right-to-sue letter from the EEOC and file a Title VII law suit within 90 days of receiving that letter. *Page v. Metro. Sewer Dist. of Louisville and Jefferson City.*, 84 F. App'x 583, 584–85 (citing 42 U.S.C. § 20003–5(e), (f)).

Here, Plaintiff filed his charge of discrimination with the EEOC on August 21, 2015, was issued a right-to-sue letter by the agency on May 9, 2016 and filed his lawsuit on July 28, 2016. ECF No. 54-15. Any alleged discrimination or retaliation that occurred within or after the 300 days preceding Plaintiff's filing of the EEOC charge therefore falls within Title VII's statute of limitations. But any conduct that occurred before the 300 days (that is, before October 25, 2014) cannot support a timely Title VII claim. Accordingly, to the extent Plaintiff claims Cholewinski and Lipscomb discriminated against him when they encouraged him in 2013 to apply for the Package Driver position—a position Plaintiff was hired for but contends foreclosed certain promotion opportunities—that conduct cannot form the basis for a timely Title VII claim. *See* ECF No. 60-1, PageID.522, 525.

A plaintiff in a race discrimination action generally "has the burden of proving by a preponderance of the evidence a *prima facie* case." *Texas Dep't of Comm. Aff. v. Burdine*, 450 U.S. 248, 252–53 (1981). Once the

13

plaintiff presents a prima facie case, the burden shifts to the defendant to articulate a legitimate, non-discriminatory reason for the adverse employment action. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–03 (1973). If the defendant meets this burden, the plaintiff then must show that the defendant's stated reason is mere pretext for discrimination. *Id.*

### A. Failure to promote

To establish a prima facie case of race discrimination based on a theory of failure to promote, a plaintiff must show that: "(1) he is a member of a protected class; (2) he applied for and was qualified for a promotion; (3) he was considered for and denied the promotion; and (4) other employees of similar qualifications who were not members of the protected class received promotions at the time the plaintiff's request for promotion was denied." *Nguyen v. City of Cleveland*, 229 F.3d 559, 562 (6th Cir. 2000) (citing *Betkerur v. Aultman Hosp. Ass'n*, 78 F.3d 1079, 1095 (6th Cir. 1996); *Brown v. Tennessee*, 693 F.2d 600, 603 (6th Cir. 1982)). Alternatively, a plaintiff can make his prima facie case by presenting direct evidence of discriminatory intent. *Nguyen*, 229 F.3d at 563. The first and third elements of Plaintiff's prima face case are not disputed. The parties agree that Plaintiff, an African-American, is a member of protected class and that he was considered for and was denied several promotions. *See* ECF No. 52, PageID.186 (Def.'s Response Br.). But UPS contends Plaintiff cannot fully establish the second and fourth

elements: that he was qualified for each of the management-level positions he applied for; and that Plaintiff was passed over for promotion in favor of other employees with similar qualifications who were not members of the protected class. *See id.* As to the non-engineer positions, the Court finds Plaintiff has met his prima facie burden of showing he was qualified. But Plaintiff has not shown that other similarly qualified employees who were not members of the protected class received promotions at the time his requests for promotion were denied.

To establish that he was qualified for the management-level positions he applied to, Plaintiff need only show that he fulfilled UPS's "objective qualifications" for those jobs. *Upshaw v. Ford Motor Co.*, 576 F.3d 576, 585 (6th Cir. 2009) (internal quotations omitted) (citing *Wexler v. White's Fine Furniture*, 317 F.3d 564, 575–76 (6th Cir. 2003) (en banc) (holding that assessment of qualifications at the prima facie phase focuses only on objective qualifications). Here, it is undisputed that Plaintiff passed the written examination and fulfilled the other requirements necessary to become MAPP and MRE-qualified. ECF No. 59, PageID.465–66. He was therefore "eligible to apply for fulltime management-level positions." *Id*. Additionally, Plaintiff's manager testified that, for each position he applied to, he essentially permitted Plaintiff to apply because he had a college degree. ECF No. 60-2, PageID.579; ECF No. 60-3, PageID.603. Implicit in this testimony is Cholewinski's belief that Plaintiff met the objective qualifications to

apply for management-level jobs because he had a degree. Further, by comparing his qualifications to those of candidates eventually hired to fill the non-engineering positions he applied to, Plaintiff has presented additional evidence that he was qualified for those positions. For example, Plaintiff has a college degree and it appears UPS hired two recent college graduates who Plaintiff asserts had less seniority to fill the Finance Specialist positions to which he had applied. *See* ECF No. 54-13, PageID.415. From this the Court infers that Plaintiff met the objective qualifications for that position. The Court notes that Plaintiff has conceded he was not qualified for the engineering positions he applied to, which includes the IE Supervisor, IE Hub Planning Supervisor, Plant Engineering Supervisor, and Processing Engineer positions. Viewing the facts in the light most favorable to Plaintiff, the Court finds that Plaintiff has shown he met the minimum objective qualifications for the other applied-for positions. ECF No. 59, PageID.569; *see Anthony v. BTR Auto. Sealing Sys., Inc.*, 339 F.3d 506, 516 (6th Cir. 2003); *see also See White v. Baxter Healthcare Corp.*, 533 F.3d 381, 391 (6th Cir. 2008) (explaining that the burden a plaintiff carries to establish a prima facie case is "not onerous").

That showing is not sufficient to carry Plaintiff's burden, however. To meet his prima facie case, Plaintiff must also show by a preponderance of the evidence that other employees of similar qualifications who were not members of his protected class received promotions while his

requests for promotion were denied. *See Provenzano v. LCI Holdings, Inc.*, 663 F.3d 806, 812–13 (6th Cir. 2011). To assess this fourth element of Plaintiff's prima facie case, the Court must "conduct an independent review of the relative qualifications of the plaintiff and the person selected for the position based on the evidence presented." *White v. Columbus Metro. Hous. Auth.*, 429 F.3d 232, 243 (6th Cir. 2005). Plaintiff must demonstrate that the employees who were hired instead of him were "similarly situated in all respects." *Russsell v. Drabik*, 24 F. App'x 408, 412 (6th Cir. 2001) (citing *Slotts v. Memphis Fire Dep't*, 858 F.2d 289 (6th Cir. 1988)). The Sixth Circuit has explained that a plaintiff in this context must show that the employees with allegedly similar qualifications were "subject to the same standards and . . . engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or their employer's treatment of them for it." *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 583 (6th Cir. 1992).

For several of the management positions Plaintiff applied to, UPS has produced evidence that the individual hired or promoted instead of him either was a member of the same protected class or was more qualified. For example, Amiya Simmons, the UPS Materials Distribution Center Director, signed a sworn declaration explaining that Plaintiff was not selected for the Materials Distribution Center Pick Specialist or Warehouse Supervisor positions "because he was not the most qualified candidate." ECF No. 54-7, PageID.381. Specifically, Simmons expressed

that in his opinion Plaintiff "lacked the analytical and leadership skills necessary to fill" either of these positions. ECF No. 54-7, PageID.381. Instead of Plaintiff, Simmons hired an African-American woman with leadership and finance experience who had previously served as a supervisor at another UPS facility for the Warehouse Supervisor position, and a white woman with "excellent analytical skills" and experience as a Data Supervisor to fill the MDC Pick Specialist position. ECF No. 54-7, PageID.381–82, 389. Similarly, UPS's Mid-South District Human Resources Operation Manager averred that Plaintiff "was not the most qualified candidate" for the Employee Services Specialist position. ECF No. 54-8, PageID.394–95. That job instead went to an African-American lateral candidate who had 36 years of experience in various UPS departments. ECF No. 54-8, PageID.394–95. Further, Connor Huber, a white man hired to fill the Finance Specialist position, had work experience in finance and sales, which Plaintiff did not. UPS has also produced additional affidavits by individuals in charge hiring for the Solutions Engagement Supervisor, Finance Specialist, Finance Analyst positions illustrating that the individuals hired for these positions were more qualified than Plaintiff, or that those positions had previously been filled by individuals who are members of Plaintiff's protected class. ECF No. 54-9 (Dan Barr Decl.); ECF No. 54-10 (Steve Boulton Decl.); ECF No. 54-11 (Scott Wade Decl.); ECF No. 54-12 (Woodretta Allen Decl.).

In response to UPS's motion for summary judgment, Plaintiff has failed to provide any affirmative evidence that he has qualifications similar to those of each of the individuals who was promoted over him, or that his work performance and disciplinary history were comparable. Indeed, in Plaintiff's response brief he spends only half a page responding to UPS's argument that he cannot prove his prima facie case for the failure-to-promote claim and appears largely to abandon that claim. ECF No. 58, PageID.461. The response brief addresses only six of the promotion positions and, even for those six the Court finds that Plaintiff has failed to adduce evidence that he was passed over in favor of other employees of similar qualifications who were not members of the protected class. *Nguyen v. City of Cleveland*, 229 F.3d 559, 562 (6th Cir. 2000). Plaintiff has provided no evidence of the other individuals' disciplinary or employment history and has otherwise failed to produce evidence that they were in all respects similarly situated to him. *See* ECF No. 58, PageID.444. Because the undisputed material facts demonstrate that Plaintiff cannot meet a required element of his prima facie case, summary judgment in favor of UPS must be entered on his failure-to-promote claim.

## B. Retaliation

To establish a prima facie case of retaliation, a plaintiff must show that: "(1) he engaged in activity protected by Title VII; (2) the exercise of his civil rights was known to the defendant; (3) thereafter, the defendant

took an employment action adverse to the plaintiff; and (4) there was a causal connection between the protected activity and the adverse employment action." *Nguyen*, 229 F.3d at 563. To establish the causal-connection prong, a plaintiff must produce evidence "sufficient to raise the inference that her protected activity was the likely reason for the adverse action." *EEOC v. Avery Dennison Corp.*, 104 F.3d 858, 861 (6th Cir. 1997) (quoting *Zanders v. Nat'l R.R. Passenger Corp.*, 898 F.2d 1127, 1135 (6th Cir. 1990)). Evidence that defendant treated the plaintiff differently from similarly situated employees or that the adverse employment action quickly followed the plaintiff's exercise of his protected rights is relevant to assessing whether a causal connection exists. *Nguyen*, 229 F.3d at 563. The Sixth Circuit instructs that establishing a prima facie case of retaliation "is a burden easily met." *Wrenn v. Gould*, 808 F.2d 493, 500 (6th Cir. 1987).

If a plaintiff succeeds in making out the elements of a prima facie case of retaliation, the burden of production of evidence shifts to the employer to articulate a legitimate, nondiscriminatory reason for its actions. *Laster v. City of Kalamazoo*, 746 F.3d 714, 730 (6th Cir. 2014). If the employer satisfies that burden of production, the burden then shifts back to the plaintiff to show that the employer's stated reasons for the adverse action was not the true reason for the employment decision. *Dixon v. Gonzales*, 481 F.3d 324, 333 (6th Cir. 2007). As with a Title VII discrimination claim, a plaintiff asserting retaliation can meet his

burden either by introducing direct evidence of retaliation or by presenting circumstantial evidence that supports an inference of retaliation. *Laster*, 746 F.3d at 730 (citing *Imwalle*, 746 F.3d at 730).

Excepting the fourth element of Plaintiff's prima facie claim for Title VII retaliation, the parties agree that Plaintiff has established the other elements of his prima facie case. It is undisputed that filing union grievances, internal employer complaints and a formal charge of discrimination with the EEOC are all activities protected by Title VII. *See Johnson v. Univ. of Cincinnati*, 215 F.3d 561, 579 (6th Cir. 2000). And UPS acknowledges plaintiff suffered adverse employment actions. But it challenges Plaintiff's ability to show a causal connection between the protected activity and the adverse employment action.

The Court finds that Plaintiff has presented evidence of a causal connection between his filing of internal and union complaints, as well as the formal EEOC charge, and the adverse employment actions taken against him sufficient to state a prima facie case of retaliation. Although temporal proximity, standing alone, is generally not enough to establish a causal connection, "a temporal connection coupled with other indicia of retaliatory conduct may be sufficient to support a finding of a causal connection." *Randolph v. Ohio Dep't of Youth Servs.*, 453 F.3d 724, 737 (6th Cir. 2006). The Sixth Circuit has found that inferring causation from temporal proximity is appropriate where the adverse action occurred three months after the protected activity. *See Singfield v. Akron Metro.*

*Hous. Auth.*, 389 F.3d 555, 563 (6th Cir. 2004). Here, Plaintiff has presented evidence that he suffered adverse employment actions shortly after filing grievances with his union, and the EEOC complaint. He filed grievances on August 14 and 19, 2015 alleging perceived inequities in his treatment, and harassment by Cholewinski. *See* ECF No. 54-2, PageID.313–21. Shortly thereafter, on August 21, 2015, Plaintiff filed his discrimination complaint with the EEOC. ECF No. 60-13, PageID.758. Less than one month later, on September 18, 2015, Cholewinski issued Plaintiff six warning letters about his perceived failures to follow instructions and mandated procedures. ECF No. 54-2, PageID.328–34. Additionally, Moore, the union representative for UPS employees, echoed Plaintiff's assertions that Cholewinski disciplined him more frequently and harshly than other employees. According to Moore, the violations Cholewinski wrote Plaintiff up for were comparatively minor and not of the magnitude that would typically warrant formal disciplinary action. ECF No. 60-7, PageID.682; ECF No. 60-2, PageID.594. Moore felt it appropriate to ask Cholewinski to "back off" because he was being "a little bit too hard on [Plaintiff.]" ECF No. 60-7, PageID.683.

Chris Swafford, Plaintiff's supervisor during 2016, also issued him numerous warning letters and notices of intent to discharge Plaintiff from his job at UPS. Some of those notices were sent just days after Plaintiff filed union grievances about Swafford and after Plaintiff sent emails to UPS Human Resources claiming Swafford made him feel

"intimidated and threatened for [his] life." ECF No. 60-13, PageID.770. For example, Plaintiff sent an email to UPS on July 13, 2017 complaining that he felt intimidated and threatened by Swafford. ECF No. 60-13, PageID.770. Just four days later, on July 17, 2017, Plaintiff was issued a warning for engaging in unprofessional conduct. *See* ECF No. 59-1, PageID.503. Additionally, the testimony of Campbell, who worked with Plaintiff at the Whites Creek facility, supports Plaintiff's assertion that Swafford disciplined Plaintiff more harshly than other employees, and that Swafford in general retaliated against employees who complained about him to UPS or their union. *See* ECF No. 60-8, PageID.688. Courts in this district have found similar evidence sufficient to establish the causation prong of a prima facie case for retaliation. *See, e.g., Norman v. Rolling Hills Hosp., LLC*, 820 F. Supp. 2d 814, 824–25 (M.D. Tenn. 2011) (finding temporal proximity plus evidence that white employees were not disciplined for behavior plaintiff was disciplined for sufficient to establish causation).

UPS in turn has come forth with evidence of legitimate, nondiscriminatory reasons for its actions. Cholewinski and Lipscomb both testified that Plaintiff's performance fell below expected standards. *See* ECF No. 60-3, PageID.604, 612 (asserting that the amount of time it took Plaintiff to complete his delivery route began "increasing as time went on"); ECF No. 60-2, PageID.584–85 (stating that Plaintiff began "failing to follow the methods, failing to follow proper procedures, failing

to follow proper instructions, previous instructions given"); ECF No. 60-3, PageID.603 (explaining that Plaintiff "had had over 20 accidents" as a Package Driver). While these proffered reasons offer legitimate non-discriminatory explanations for the seemingly harsh disciplinary action Plaintiff experienced, the record also contains evidence from which a jury could conclude that the stated reasons were mere pretext for unlawful retaliation. That evidence includes the comparatively harsh disciplinary action to which Plaintiff appears to have been subjected, and testimony that other white employees were not disciplined for engaging in similar behavior. Relying upon such evidence, a reasonable jury could find that UPS's articulated non-discriminatory reasons are not the real reasons for the adverse actions taken against Plaintiff. The question of retaliation will therefore remain for trial. *See Bryant v. Rolling Hills Hosp.*, 836 F. Supp. 2d 591, 616 (M.D. Tenn. 2011) (citing *Imwalle*, 515 F.3d at 551).

### C. Retaliatory hostile work environment

For reasons similar to those discussed in the previous section on Plaintiff's retaliation claim, the Court finds that Plaintiff has also established a prima facie case that he was subjected to a retaliatory hostile work environment under Title VII, the THRA, and § 1981. The elements of a prima facie case for retaliation and a retaliatory hostile work environment claims are largely the same except that in the retaliatory hostile work environment context instead of showing that the defendant took an adverse employment action against him, the plaintiff

must show that he "was subjected to severe or pervasive retaliatory harassment by a supervisor." *See Morris v. Oldham Cty. Fiscal Court*, 201 F.3d 784, 792 (6th Cir. 2000). Similarly, the plaintiff in a retaliatory hostile work environment case must show a causal connection between his engagement in an activity protected by Title VII, and the harassment he was subjected to. *See Cleveland v. S. Disposal Waste Connections*. 491 F. App'x 698, 707, 2012 WL 3241561 (6th Cir. Aug. 9, 2012). As with other Title VII claims, once the plaintiff establishes a prima facie case, the burden of production of evidence shifts to the employer to articulate a legitimate, nondiscriminatory reasons for its actions. *Wiley v. Slater*, 20 F. App'x 404, 406 (6th Cir. 2001). The plaintiff must then show that the reason proffered by the employer was not the true reason for the employer's actions. *Id.*

The Court must consider the totality of circumstances to determine whether the alleged conduct by the employer was sufficiently severe or pervasive to constitute a hostile work environment. *Williams v. General Motors Corp.*, 187 F.3d 553, 562 (6th Cir. 1999). This inquiry involves considering the frequency and severity of the alleged conduct, whether it is physically threatening, and if it unreasonably interferes with an employee's work performance. *See Harris v. Forklift Sys., Inc.*, 510 U.S. 17 (1993). The severity and pervasiveness portions of this inquiry have both objective and subjective components. *Id.* at 21–22. Here, there is ample testimony by Plaintiff that he felt intimidated and harassed at

work—largely because of the conduct of Cholewinski and Swafford. *See, e.g.*, ECF No. 60-13, PageID.770 (email from Plaintiff to UPS Human Resources stating that he feared for his life). The record also contains evidence of a large number of written disciplinary warnings Plaintiff was issued, as well as testimony that Plaintiff was monitored and disciplined in a manner more exacting and harsh than other employees. *See supra* at 7–11.

UPS has presented evidence in support of legitimate, non-retaliatory reasons for its actions towards Plaintiff—namely its position that Plaintiff's job performance was deficient. *See* ECF No. 60-2, PageID.584–85; ECF No. 60-3, PageID.603, 609. But Plaintiff has also adduced evidence from which a reasonable jury could conclude that he was subjected to a hostile work environment because of complaints of harassment and discrimination he raised through UPS complaints, union grievances, and his EEOC charge. *See supra* at 7–11. This claim is thus best left to the jury to assess.

## II. Tennessee Human Rights Act and 42 U.S.C. § 1981 claims

Plaintiff also asserts claims under the Tennessee Human Rights Act ("THRA"), Tenn. Code Ann. § 4–21–101 *et seq.*, and 42 U.S.C. § 1981. These claims are subject to the same burden-shifting standards as Plaintiff's Title VII claims. *See Mitchell*, 964 F.2d at 582. Claims brought under the THRA are, however, subject to a one-year statute of limitations that begins to run on the date the alleged discriminatory practices ceases.

26

Tenn. Code Ann. § 4–21–311; *Wade v. Knoxville Utilities Bd.*, 259 F.3d 452, 464 (6th Cir. 2001). Because no separate statute of limitations is provided by § 1981, the Court must also apply the one-year statute of limitations for personal injuries set forth under Tennessee law to Plaintiff's claims arising under § 1981. Tenn. Code Ann. § 28–3–104; *see Wade*, 259 F.3d at 464. Plaintiff's filing of a charge with the EEOC does not toll these one-year statutes of limitations. *Wade*, 259 F.3d at 464.

Because Plaintiff filed this lawsuit on July 28, 2016, any claims Plaintiff asserts under the THRA or § 1981 that accrued before July 28, 2015 are time-barred. *See* ECF No. 1-2 (Compl.). This includes Plaintiff's claim that UPS employees Cholewinski and Lipscomb pushed Plaintiff to apply for a Package Driver position to derail future management-level promotion opportunities. It also includes claims that Plaintiff was denied promotions because of his race to the extent those claims rely on management-level positions that were filled before July 28, 2015.

## MOTION TO STRIKE

UPS also moves to strike Plaintiff's declaration, which he attached as an exhibit to his response brief. *See* ECF No. 60-15. UPS contends that because Plaintiff seeks to introduce evidence through that declaration that was produced after discovery in this matter had closed, the declaration should be stricken or, in the alternative, UPS granted leave to address the facts contained therein. *See generally* ECF No. 64 (Def.'s Mot. to Strike).

District courts have discretion in determining whether to grant a motion to strike. *Starnfes Family Office, LLC v. McCullar*, 765 F. Supp. 2d 1036, 1047 (W.D. Tenn. 2011) (citing *Seay v. Tenn. Valley Auth.*, 339 F.3d 454, 480 (6th Cir. 2003)). The Court finds that although Plaintiff's declaration contains information about phone calls to a UPS employee hotline, the recordings of which were produced well after the close of discovery, UPS will in no way be prejudiced by permitting the Court to consider Plaintiff's declaration. The Court therefore in its discretion denies the motion to strike.

## CONCLUSION

For these reasons, the motion for summary judgment filed by Defendant United States Postal Service, Inc., ECF No. 51, is **GRANTED IN PART** and **DENIED IN PART**. Defendant's motion to strike Plaintiff Justin Bell's declaration, ECF No. 64, is **DENIED**.

Dated: September 30, 2019     s/Terrence G. Berg
                              TERRENCE G. BERG
                              UNITED STATES DISTRICT JUDGE